Serafin FLORES, Plaintiff–Appellant,

v.

George C. WELBORN, et al., Defendants–Appellees.

No. 03–3710.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 30, 2004.*

Decided Nov. 30, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Serafin Flores, Tamms, IL, pro se.

Deborah L. Ahlstrand, Office of the Attorney General, Chicago, IL, for Defendants–Appellees.

Before RIPPLE, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

In this *pro se* action under 42 U.S.C. § 1983, Illinois inmate Serafin Flores claims that prison employees at Tamms Correctional Center denied him adequate medical treatment for a lipoma, a benign fatty tumor located under the skin on his hip. The district court granted summary judgment for the defendants, and Flores appeals, arguing that the district court should have let his Eighth Amendment claim for deliberate indifference to a serious medical condition proceed to trial. We affirm.

We set forth the facts in the light most favorable to Flores. *See Gil v. Reed,* 381 F.3d 649, 651 (7th Cir.2004). In June 1999, several months after arriving at Tamms, Flores began to complain of occasional pain and numbness throughout his leg from a soft lump on his right hip that doctors at Menard Correctional Center, where he was previously confined, had determined to be just fat. In response to Flores' complaints, nurses and nurse practitioners examined the leg five times during the following two weeks and found that the lump had "no palpable edges," that the skin around it had "good sensation," and that it was not impeding Flores from walking, kneeling or rising from a kneeling position. A doctor also examined Flores and reassured him that the lump was a lipoma and thus merely a cosmetic concern that would go away in time. He prescribed Tylenol and exercise. A few weeks later, when Flores again complained of pain and numbness, a nurse practitioner reexamined him, but found no change in his condition. She noted that Flores swung his legs back and forth without any visible sign of distress while sitting on the gur-

ney, that he walked without difficulty or any sign of a limp or favoritism toward either leg, and that he was able to sit and stand freely. Flores subsequently asked a nurse to schedule a visit with the doctor because, he said, the lipoma made it difficult for him to put pressure on his leg while walking. Guards, however, informed a nurse practitioner, and she noted in Flores' file, that he was participating daily in yard privileges. After conferring with a doctor, the nurse practitioner explained to Flores that the doctor would not see him because the lump had already been diagnosed as a lipoma and, in the doctor's opinion, could not be the source of his reported pain because a lipoma contains no nervous tissue.

Since that time Flores has continued to see medical staff on a regular basis for a variety of complaints and has periodically mentioned his lipoma. Nurses have monitored Flores, checking his hip on request. A doctor examined him in February 2000, noting a good range of motion, a normal ability to walk, and a mild depression on his hip where the fatty mass used to be. During that examination the doctor interpreted the depression as evidence that the lipoma was resolving. Flores then began complaining of a second lipoma that, he claims, was developing in his groin, but repeated doctors' examinations have revealed no abnormality. In August 2000 a doctor prescribed two weeks of medication for inflammation that nurses noted to have developed where the lipoma used to be. A doctor examined Flores' hip again in July 2001. Though Flores still complained of a lump that was causing him pain, the doctor could confirm neither the existence nor the source of the pain and prescribed no treatment:

> There are no tender places, no masses, no nodules, no adenopathy. Was noted in the yard to be walking fast, swinging arms. When time to come for medical

bounded up steps two to three at a time. When he was returned to cell and about to resume yard activity, he moved and walked slowly with a mild limp.

In his complaint, Flores disputed the diagnosis of his lump as a noncancerous lipoma. He complained that the growth caused pain throughout his leg and interfered with muscle function, but was not being treated. Finally, he asserted that the growth was causing permanent damage to his "muscles and tissue in that area where the tumors have deteriorated."

■ In their motion for summary judgment, the doctors argued that none of them were deliberately indifferent and that Flores did not suffer from any serious medical condition. They submitted the affidavit of Marvin Powers, M.D., a defendant who attests that Flores had a fat tumor called a lipoma on his right hip and that lipomas are not painful, "never become cancerous," and they are best treated by leaving them "undisturbed." The defendants also submitted the chronology of Flores' medical records and the affidavit of Terry Caliper, the Health Care Unit Administrator at Tamms, both detailing the treatment provided to Flores by the defendants. Finally, they submitted the deposition of Flores, which, they claim, does not evidence deliberate indifference, but merely medical malpractice at the worst.

In response to the defendants' motion, Flores submitted the following as evidence that the defendants were deliberately indifferent: (1) his medical records, noting the absence of any examination by a medical doctor between February and August 2000 despite his complaints of pain and entries by nurses noting inflammation that, he opined, were evidence that his tumor was growing as opposed to dissipating; (2) an unidentified document, which gives general information about lipomas and states that lipomas "may be removed

if they are unsightly or interfere with muscle function"; (3) an unidentified document stating that surgical removal of a lipoma is generally "recommended only if the lipoma is causing pain, pressure, or irritation, or if it's growing (especially if it's growing rapidly)"; (4) drawings copied from Gray's anatomy, which, he asserted, showed that " 'nerves and artery [sic] and veins' are located in the area" of his tumor. In short, he provided nothing more than his own opinion that his growth was misdiagnosed, that it was improperly treated, and that it caused permanent damage.

The district court granted summary judgment, adopting the magistrate's recommendation and finding that the defendants were not deliberately indifferent, and thus did not find it necessary to consider the propriety of the magistrates judge's recommended finding that Flores did not suffer from an objectively serious medical condition. On appeal, Flores argues that the court erred in granting summary judgment because he did offer evidence that the prison doctors acted with deliberate indifference to his medical needs. Specifically, he argues, while the lipoma itself may not have been a source of pain, it caused him pain by impinging on nerves and veins and therefore should have been surgically removed. He further contends that his complaints of pain and numbness were ignored between February and August 2000.

We review a grant of summary judgment *de novo*. *Gil*, 381 F.3d at 658. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A prisoner cannot establish deliberate indifference unless he can show that the defendant knew of an excessive risk to his health and consciously disregarded it. *Gil*, 381 F.3d at 664. The defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A difference of medical opinion or even a showing of medical malpractice does not alone suffice. *See Estate of Cole Pardue v. Fromm*, 94 F.3d 254, 256 (7th Cir.1996).

In this case we agree with the district court that Flores produced no evidence of indifference by the defendants. Flores' principal allegation appears to have been that his lipoma should have been removed because it was growing and interfering with muscle function, but he offered no evidence to support his position. On the contrary, he never challenged the consistent notations made in his medical file following examinations by doctors and nurses that his range of motion and ability to walk, sit and stand were all unimpaired. Moreover, there is no evidence that the tumor ever grew. Even if Flores had presented any evidence that his growth should have been removed, he would have shown at most a difference of medical opinion. *See Estate of Cole Pardue*, 94 F.3d at 256. And to the extent that Flores alleged that he was denied treatment for six months in 2000 while his tumor was growing, his allegation is also unsupported by the evidence. Between the February and August doctor's examinations, he was twice examined by nurses. The nurses noted only apparent inflamation, which was treated with an anti-inflammatory during the doctor's August exam.

AFFIRMED.